Good morning. The first case that we have this morning is the United States v. Barrera and Mr. Thedford. You have to turn your microphone on. Thank you your honors. I apologize. May it please the court. Your honor, the standard of you for the imposition of a sentence is abuse of discretion. Here, your honor, we argue that the district court abused its discretion in sentencing Mr. Barrera to 110 months imprisonment. There is little question, your honors, that the court of appeals may apply presumption of reasonableness for sentences that fall within the sentencing guidelines. We make no argument that the sentence here did not fall within the sentencing guidelines. However, that presumption of reasonableness can be overcome. We believe, or rebutted rather, we believe that it can be rebutted here in this case. The district court sentenced Mr. Barrera while applying or focused on the offense conduct, but the district court failed to articulate the 3553 factors or use that analysis as they must in determining ultimately my client's sentence. During the sentencing hearing itself, the court spoke regarding the actual activity for which Mr. Barrera was accused. That activity included not only the possession of a gun for which he pled guilty, but the court also made implications regarding other conduct. Although we understand that that on the conduct certainly is relevant and should be, uh, reviewed and applied by the court, that alone without reviewing the other 3553 factors is improper. What? I don't understand the imposition of a sentence, your honor, only focused on the first prong 35 53, which is the nature and circumstances of the offense is proper. However, it is improper for a sentence to be imposed without the review of, uh, factors in 35 53 a two, which include, of course, reflecting the seriousness of the offense, uh, promoting respect for the law and to provide just punishment for the offense and to, uh, afford, uh, adequate deterrence, as well as protect the public and provide for the educational needs and vocational needs of the sentence. Defendant. In this case, your honor, there is nothing in the record that shows that the district court applied prompt to follow A B C or D as it articulated his sentence in this case. Well, we've we've said time and again that a district judge is not required to basically go through a checklist under 35 53 a as long as it's apparent that the judge, um, gave consideration to the principal factors. Um, here we've got a guideline sentence and I've been trying to keep an eye out, Mr Thetford. But, um, have we ever held that a guideline sentence was substantively unreasonable? Your honor, I do not have, uh, any site or case that I can. I haven't. I haven't seen any. I might have. I might have missed one, but I'm pretty sure I would have noticed. Um, I understand you're making a procedural point, not necessarily a purely substantive one here. Um, but it's it's It's a little hard for me to, uh, fault the district court when the court focused on this rather stunning fact of Mr Barrera's breach of just gross violation of the protective order, putting the government's informant in danger. It's only the bottom of the guideline range. Um, yeah, but, uh, um, we've got him focused. We got the judge focused on nature and circumstances of the offense, history and characteristics of the offender. He's looking at, uh, just deserts. He's looking at protecting the public. He's applying the guidelines. What more was he supposed to consider here? Your Honor, with all due respect, I do not believe that the court actually articulated, um, in a reference to, uh, protecting the public. I think that's implied based on I think the argument. So that's that's perfectly proper to be implied, though. He doesn't have to do a checklist as Judge Hamilton just mentioned. You know, three years ago, none of this had to be done. And I kept saying, Well, you didn't have to do it. Put down a checklist, took down checklist and counsel keep pressing to have the Court of Appeals do the sentencing rather than the district court. And that sounds like what you're asking us to do. Uh, no, Your Honor, I am not. I'm simply asking this court to hold the district court to the standard that is required under 35 53. I will suggest to the court in response to, uh, Your Honor's suggestion regarding guidance and sentencing. In fact, the very reason for 35 53 53 factors is so that we will have some guidance as it relates to sentencing here. Um, with there being no mention of those factors in front, too, we don't know where the guidance is. I agree with the court that there does not need to judge the judge, for example, on rehabilitation and health care. The judge was all over that, right? He was actually very proactive in dealing with what what Mr Barrera was saying about his health. Correct? Yes, sir. He was judged until sentencing. Um, the government argues and will argue, of course, that, uh, the district court gave a lot of attention to Mr Barrera's health concerns. I do not disagree with that as it relates to his change of plea hearing, the transcript of which is available with the appellate brief. However, the district court may no mention or stamp mentioned rather of his health concerns as applying them to 35 53 factors. And your honors, I believe that that would have been appropriate at the time to apply, certainly as it related to the issue of it. His ability to actually commit future crime or if it would have helped towards deterrence. We believe that that would be a relevant, uh, application or analysis to make here. The district court failed to do anything close to that other. The judge did put an express recommendation in the judgment that the Bureau of Prisons assign him to a medical center. Um, was there any actual medical evidence presented to the district court in this case? Your honor, there was, um, based on the judge's order that there would be live and oral testimony from personnel at the M. C. C. Regarding health care as the sentencing was pending post. I'm talking about I'm talking about, uh, even a letter from a doctor who had treated Mr Barrera. Mm. Your honor, representations were made by Mr Barrera and myself during, uh, various hearings. There was not any documentation presented from Mr Barrera side supported of his medical conditions, but they were, Your honor, um, I guess signed off on by the M. C. C. Because he was being treated there. In fact, did have a melanoma on his head that was cancerous that was being get medical issues, including, uh, what would have been obvious to anyone seeing Mr Barrera of his deteriorated state. Thank you. If you're honest, have no further questions. I'd like to reserve the rest of my time for rebuttal. All right. Mr Cohen. Good morning. You may please the court. Brian Kerwin United States. Your honor, the district court identified the factors that in its view necessitated a sentence of the low end of the defendant's guidelines range. Those factors were the serious nature of illicit gun trafficking, the danger that such conduct poses to the community, the defendant's troubling conduct while on bond that exposed the confidential informant to intimidation and physical danger. In the course of the court's discussion, the court touched on the dangers that the public faced by this illicit gun trafficking and the defendant's failure to respect the law and the court's protective order that governed discovery in this case. Now, if I could just briefly address, um, the medical needs questions that the judge Hamilton raised for the appellant. Um, I just want to correct 11 factual notation, and that's it's true that the defendant did not produce any documentation that substantiated his claim of having melanoma and needing that treatment. What I wanted to point out for the court was that at the change of plea hearing, Judge Gettleman required the parties to come back for a joint status hearing where they could report to the court exactly what treatment the defendant was receiving and what what the M. C. C. Had diagnosed when he went into custody. And with that, those documentation that documentation revealed at that status hearing was that when the defendant went into custody, he was interviewed about this and concerned about and he confessed to, um, those folks at the M. C. C. And in fact, he hadn't been diagnosed with any melanoma. He believed it was cancer, but he was not being treated for it. Um, and he did not have scheduled chemotherapy as he had told the judge at, uh, at the change of plea hearing. So the judge continued, nevertheless, to credit his assertion that it may be cancer because there was an obvious and visual mark on the defendant's head, which is why he included that recommendation in the J. N. C. But the court, um, absolutely was aware of the potential for this defendant's medical issues. Uh, it just had never been substantiated to him. And what was before the court showed at a minimum that this was something that hadn't been diagnosed yet. So, Your Honor, because the district court's reasons are consistent with 18 U. S. C. Section 35 53 A. The court here committed no procedural error and posed a substantially reasonable sentence of 110 months incarceration. So unless the panel has any questions for the government, I would see the remainder of my time and ask the one quick questions. Your brief referred to the posting of gang videos from the Dirksen building. That's correct. What happened? Where and where were these taken? They appear to be taken on a cell phone, Your Honor, in the lobby of the Dirksen building, and then up on the 17th floor, 19th floor of Judge Gettleman's courtroom is in the hallway with two fellow gang members of his that were accompanying him to court. Um, it was just sort of a video diary of his trips to the Dirksen building, um, with commentary and references to being there for gang business. Interesting. Okay, I gather pretrial detention policies are a little different in the northern district of Illinois than they might be in some other districts in this circuit. Well, just as a procedural matter, when the original social media activity came to light, it was just four posts that had been brought to the attention of, um, the A. T. F. The government subsequently executed a search warrant on the defendant's Snapchat account, and much of that material, including the videos that Your Honor is referencing, came to shortly before the sentencing and were brought to Judge Gettleman's attention then, when the defendant was already in custody. Okay. All right. Interesting. Thank you. Sure. Unless the court has any other questions for the government, I'd ask that the court affirmed the sentence imposed by the district court. Thank you. Thank you, Mr Rowan. Mr Stedford. Your Honor, I have, uh, no rebuttal based on the arguments of counsel. We simply make it the request that this case be remanded for resentencing based on the court's abuse of discretion and not applying the 35 53 factors completely. Thank you, Mr Stedford. Thanks to both counsel and the cases taken under advice.